IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RANDY RUDEL,<br><br>Petitioner,<br><br>vs.<br><br>HAWAII MANAGEMENT ALLIANCE ASSOCIATION,<br><br>Respondent. | Civ. No. 15-00539 JMS-RLP<br><br>ORDER (1) GRANTING IN PART PETITIONER'S MOTION FOR DETERMINATION OF VALIDITY OF LIEN, ECF NO. 38; AND (2) DENYING RESPONDENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 40 |

## ORDER (1) GRANTING IN PART PETITIONER'S MOTION FOR DETERMINATION OF VALIDITY OF LIEN, ECF NO. 38; AND (2) DENYING RESPONDENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 40

## I. INTRODUCTION

On December 29, 2014, Petitioner Randy Rudel ("Rudel") crashed his motorcycle into a vehicle allegedly making an illegal left turn in front of him. ECF No. 1-2 at 7. He suffered catastrophic injuries, resulting in multiple surgeries and partial amputations of his left leg and forearm. *Id.* Because of the accident, Respondent Hawaii Management Alliance Association ("HMAA") paid $400,779.70 in health-insurance benefits under Rudel's HMAA benefit plan ("the Plan"). ECF No. 49-6 at 1-5. Rudel also received a $1.5 million third-party tort

1

settlement from the vehicle-driver's liability insurance carrier.  ECF No. 1-2 at 14.

HMAA then claimed a lien against Rudel, seeking reimbursement of the

$400,779.70 from his $1.5 million settlement, based on a reimbursement provision

in the Plan.  ECF No. 49-6 at 1.  Rudel filed this action to determine the validity of

HMAA's claim of lien.

The court faces two Motions.  Rudel filed a "Motion for

Determination of Validity of Claim of Lien of [HMAA]," ECF No. 38, ultimately

arguing that HMAA is not entitled to *any* reimbursement.  HMAA responded with

a Motion for Partial Summary Judgment, ECF No. 40, contending that Rudel's

action is preempted by the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and that its lien is valid under the Plan.  The

Motions raise complex and important questions involving two distinct ERISA-

preemption doctrines as applied to two interrelated Hawaii statutory provisions,

Hawaii Revised Statutes ("HRS") §§ 431:13-103(a)(10) and 663-10.

Based on the following, Rudel's Motion is GRANTED in part, and

HMAA's Motion is DENIED.

///

///

///

## II. BACKGROUND

### A. Factual Background

The circumstances of the December 29, 2014 accident, as well as the severe nature of Rudel's injuries, are not at issue in these Motions. For present purposes, it is undisputed that Rudel was a member of an ERISA plan — an HMAA employee-sponsored health benefits plan that provided him certain insurance benefits, including medical care, treatment, and services for injuries resulting from the accident. ECF No. 49-3 at 2.[1] Nor is it disputed that HMAA eventually paid $400,779.70 in accident-related expenses (at least as of November 16, 2015) out of total charges of $634,839.03.[2] ECF No. 49-6. The Petition also

---

[1] "[HMAA] dba Hawaii Medical Assurance Association" is "a Hawaii Mutual Benefit Society." ECF No. 41-2 at 1; *see also* ECF No. 38-3 at 1 ("[HMAA] is registered with the State of Hawaii Department of Commerce and Consumer Affairs, Insurance Division, as a Mutual Benefit Society[.]").

[2] HMAA paid Rudel's medical expenses after Rudel filed a related suit on June 19, 2015 against HMAA under ERISA § 502(a), 29 U.S.C. § 1132(a). *See Rudel v. Haw. Mgmt. All. Ass'n*, Civ. No. 15-00236 HG-BMK (D. Haw.). According to that suit, HMAA was refusing to pay Rudel's expenses because he declined to sign (claiming parts were contrary to Hawaii law as an illegal insurance practice) a "Reimbursement Agreement" with a clause stating:

> I agree to repay HMAA from any recovery received by me or on my behalf from any other person or party, even if the recovery does not specifically include medical expenses, is described as general damages only, or is less than the total actual or alleged loss suffered due to my injury or illness. HMAA shall be paid first from such recovery and shall have a first lien against any such recovery to the extent of its total payment of benefits. This lien

(continued . . .)

establishes that, on August 17, 2015, Allstate Insurance Company (which covered

the driver of the other vehicle) paid Rudel $1.5 million under a settlement that

Allstate represented was "the total applicable available policy limits."  ECF No. 1-

2 at 54.  The settlement agreement includes a clause stating:

> The consideration paid herein constitutes general
> damages incurred on the account of personal injury or
> sickness and/or emotional distress resulting therefrom, as
> defined by IRS Code Section 104(a)(2) and does not
> duplicate medical payments, no-fault payments, wage
> loss, temporary disability benefits or other special
> damages previously received by Randy Rudel.

*Id.* at 52.  The Petition contends that the value of Rudel's claim against the

driver/tortfeasor exceeded $5.9 million, including $4 million in general damages.

*Id.* at 11.  Finally, the record establishes that on November 16, 2015, HMAA

claimed (and still claims) a lien of $400,779.70 against Rudel's $1.5 million

settlement.  ECF No. 49-6.

---

(. . . continued)
> will attach to and follow any recovery proceeds even if the
> proceeds are distributed to another person or entity.

ECF No. 1-2 at 149.  For its part, HMAA had apparently refused to pay based on certain terms in
the Plan, and on a provision in HRS § 431:13-103(a)(10)(C)(ii) ("For entities licensed under
chapter 432 or 432D: . . . Payment of claims to an individual who may have a third-party claim
for recovery of damages may be conditioned upon the individual first signing and submitting to
the entity documents to secure the lien and reimbursement rights of the entity and providing
information reasonably related to the entity's investigation of its liability for coverage.").  ECF
No. 1-2 at 118-19.  Rudel dismissed that suit after HMAA agreed to waive its requirement that
he sign the Reimbursement Agreement before he could receive medical benefits.  *See* ECF No.
1-2 at 157.

## B.      Legal Background

### 1.      HRS §§ 431:13-103(a)(10) and 663-10

The Hawaii Insurance Code, subject to certain exceptions, defines "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance" as including the following:

> (10) Refusing to provide or limiting coverage available to an individual because the individual may have a third-party claim for recovery of damages; provided that:
>
> (A) *Where damages are recovered by judgment or settlement of a third-party claim, reimbursement of past benefits paid shall be allowed pursuant to section 663-10*;

HRS § 431:13-103(a) (emphasis added).[3]

---

[3] Section 431:13-103(a)(10) continues in part:

(B) This paragraph shall not apply to entities licensed under chapter 386 [regarding workers compensation] or 431:10C [regarding motor vehicle insurance]; and

(C) For entities licensed under chapter 432 [mutual benefit societies] or 432D [health maintenance organizations]:

(i) It shall not be a violation of this section to refuse to provide or limit coverage available to an individual because the entity determines that the individual reasonably appears to have coverage available under chapter 386 or 431:10C; and

(ii) Payment of claims to an individual who may have a third-party claim for recovery of damages may be conditioned upon the individual first signing and submitting to the entity documents to secure the lien and reimbursement rights of the entity and providing information reasonably related to the entity's investigation of its liability for coverage.

In turn, HRS § 663-10, entitled "Collateral sources; protection for liens and rights of subrogation," provides:

(a)  In any civil action in tort, the court, before any judgment or stipulation to dismiss the action is approved, shall determine the validity of any claim of a lien against the amount of the judgment or settlement by any person who files timely notice of the claim to the court or to the parties in the action.  *The judgment entered, or the order subsequent to settlement, shall include a statement of the amounts, if any, due and owing to any person determined by the court to be a holder of a valid lien and to be paid to the lienholder out of the amount of the corresponding special damages recovered by the judgment or settlement.*  In determining the payment due the lienholder, the court shall deduct from the payment a reasonable sum for the costs and fees incurred by the party who brought the civil action in tort.  As used in this section, lien means a lien arising out of a claim for payments made or indemnified from collateral sources, *including health insurance or benefits*, for costs and expenses arising out of the injury which is the subject of the civil action in tort.  *If there is a settlement before suit is filed or there is no civil action pending, then any party may petition a court of competent jurisdiction for a determination of the validity and amount of any claim of a lien.*

HRS § 663-10 (emphases added).[4]

---

[4]  Section 663-10(b) (as enacted in 2002) continues:

(b) Where an entity licensed under chapter 432 [mutual benefit societies] or 432D [health maintenance organizations] possesses a lien or potential lien under this section:

(continued . . .)

With §§ 431:13-103(a)(10) and 663-10, "the [Hawaii] legislature

intended to limit a health insurer's right of subrogation[.]"  *Yukumoto v.*

---

(1) The person whose settlement or judgment is subject to the lien or potential lien shall submit timely notice of a third-party claim, third-party recovery of damages, and related information to allow the lienholder or potential lienholder to determine the extent of reimbursement required.  A refusal to submit timely notice shall constitute a waiver by that person of section 431:13-103(a)(10).  An entity shall be entitled to reimbursement of any benefits erroneously paid due to untimely notice of a third-party claim;

(2) A reimbursement dispute shall be subject to binding arbitration in lieu of court proceedings if the party receiving recovery and the lienholder agree to submit the dispute to binding arbitration, and the process used shall be as agreed to by the parties in their binding arbitration agreement; and

(3) In any proceeding under this section to determine the validity and amount of reimbursement, the court or arbitrator shall allow a lienholder or person claiming a lien sufficient time and opportunity for discovery and investigation.

For purposes of this subsection:

"Timely notice of a third-party claim" means a reasonable time after any written claim or demand for damages, settlement recovery, or insurance proceeds is made by or on behalf of the person.

"Third-party claim" means any tort claim for monetary recovery or damages that the individual has against any person, entity, or insurer, other than the entity licensed under chapter 432 or 432D.

Section 663-10(b), which applies to "entities licensed under chapter 432 or 432D," was added in 2002 by Act 228, Hawaii Session Laws.  As detailed later, Act 228 also amended § 431:13-103(a)(10).

*Tawarahara*, 140 Haw. 285, 291, 400 P.3d 486, 492 (2017).[5]  The legislative

history and intent behind both provisions becomes critically important in resolving

the Motions.  As explained to follow, resolution ultimately turns on whether this

Hawaii law is "specifically directed toward entities engaged in insurance,"

*Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 342 (2003), such that it is

— or parts of it are — "saved" from preemption for purposes of ERISA

§ 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).  The court thus explains relevant

aspects of this history in detail, and as set forth in *Yukumoto*.

In invalidating a contractual subrogation clause in a non-ERISA

health insurance plan, *Yukumoto* recognized that:

> [s]ituations involving tort recovery in personal insurance
> contexts, like the instant case [of health insurance], often
> include payment by the tortfeasor for intangible losses
> such as life, death, health, pain and suffering, and
> physical well being, where it is difficult to ascertain exact
> measurements of loss.  In this way, recovery for medical
> insurance benefits and tort damages . . . does not
> necessarily produce a windfall or duplicative recovery to
> the insured.

---

[5]  In this context, "[s]ubrogation exists to provide insurers with a mechanism to recover the costs of reimbursing injured insured parties."  *Yukumoto*, 140 Haw. at 292, 400 P.3d at 493 (internal quotation marks and citations omitted).  It is "premised on the notion that an insured should not be able to unduly benefit from a loss and thereby enjoy a double recovery from both the insurer and the tortfeasor."  *Id.* at 291, 400 P.3d at 492 (internal quotation marks and citations omitted).  Thus, for present purposes, the court uses the terms "reimbursement" and "subrogation" synonymously.

140 Haw. at 294, 400 P.3d at 495.  And after analyzing the statutory language of both provisions and the legislative history, *Yukumoto* concluded that "the [Hawaii] legislature limited the type of damages from which a lienholder may be reimbursed.  The legislature did not provide that the lienholder may be reimbursed from an insured's recovery of general damages which, as mentioned previously, are difficult to determine exactly." *Id.* at 295, 400 P.3d at 496.  Rather, § 663-10 provides that "the amount due and owing to any holder of a valid lien, [is] to be paid to the lienholder from '*special damages* recovered by the judgment or settlement.'" *Id.*  The idea is that an injured person should not receive a "windfall" — if someone recovers damages from a tortfeasor for medical costs that were already (or will be) paid by a health insurer, the insured should not be entitled to double-recovery.  A health insurer should be entitled to (and limited to) reimbursement from "special damages" obtained from a tort judgment or settlement.

"[T]he legislative history of HRS §§ 663-10 and 431:13-103(a)(10) demonstrates that a health insurer's *sole* rights to reimbursement and subrogation are provided for in those statutes, and that a health insurer's right to subrogation is therefore limited." *Id.* at 295-96, 400 P.3d at 496-97 (emphasis added).  The statutory regime "allow[s] for collateral sources to be reimbursed when special

9

damages recovered in a judgment or settlement duplicate[] the amounts they had paid." *Id.* at 296, 400 P.3d at 497.

In particular, the Hawaii legislature passed Act 29 in 2000, "to 'make it an unfair or deceptive act to limit or withhold coverage under insurance policies because a consumer may have a third-party claim for damages.'" *Id.* (quoting H. Stand. Comm. Rep. No. 1330-00, in 2000 House J. at 1515).[6] "Act 29 made clear that collateral sources were required to pay benefits, and were limited to reimbursement under [§ 663-10] in third-party personal injury situations." *Id.* (citing H. Stand. Comm. Rep. No. 1330-00).

And in 2001, "the legislature considered and subsequently passed [Senate Bill ("S.B.")] 940, which amended . . . HRS [§] 431:13-103(a)(10) to expressly make it an unfair insurance practice for a *health* insurer to limit or exclude insurance coverage to an insured who has a third-party claim for damages." *Id.* at 297, 400 P.3d at 498 (emphasis added) (citing S. Stand. Comm. Rep. No. 107, in 2001 Senate J. at 987). "The purpose of S.B. 940 was to 'make mutual benefit societies (societies) and health maintenance organizations (HMOs)

---

[6] Article 13 of Hawaii's Insurance Code, HRS §§ 431:13-101 *et seq.* (entitled Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance) was originally enacted in 1987 as part of a comprehensive restructuring of Hawaii's insurance code. *See* 1987 Haw. Sess. Laws Act 347, § 2. Section 663-10 was originally enacted in 1986. *See* 1986 Haw. Sess. Laws Act 2 (reprinted at ECF No. 58-4).

subject to the unfair methods of competition and unfair and deceptive acts and practices of the business of insurance, for refusing to provide or limiting coverage to an individual having a third-party claim for damages." *Id.* (quoting S. Stand. Comm. Rep. No. 107).

That is, S.B. 940 (which was enacted in 2002 by Act 228 of the Session Laws of Hawaii ("SLH")) specifically amended § 431:13-103(a)(10) to clarify that "Act 29, SLH 2000, established lien rights for health insurance benefits paid[.]" *Id.* (quoting testimony of the State Insurance Commissioner). The legislature's intent in amending § 431:13-103 was "that societies and HMOs promptly pay the benefits owing under their policies, and recoup their payments from a third-party claim by lien as provided under section 663-10, HRS." *Id.* (quoting S. Stand. Comm. Rep. No. 107). Similarly, in passing Act 228, the legislature explained:

> Refusing to provide or limiting health coverage to persons who have third-party claims for damages is not permitted, except for reimbursement under section 663-10, Hawaii Revised Statutes (HRS). This measure makes such acts unfair insurance practices under article 13 of the insurance code to eliminate any doubt that health insurers have always been subject to these limitations under section 663-10, HRS. Health insurers continue to be entitled to reimbursement of their subrogation liens under section 663-10, HRS.

*Id.* at 298, 400 P.3d at 499 (quoting Conf. Comm. Rep. No. 67-02, in 2002 House

J. at 1783). Act 228 removed statutory language appearing to exempt health

insurers, and added § 431:13-103(a)(10)(C), applicable to "entities licensed under

chapter 432 or 432D." 2002 Haw. Sess. Laws Act 228, § 1. Act 228 also, as noted

earlier, added several paragraphs to § 663-10, specific to those entities. *Id.* § 2.

### 2. *HMAA's Plan*

In contrast to this Hawaii law, HMAA's Plan defines a right of

reimbursement that is not limited to special damages. Specifically, the Plan's

Summary Plan Description ("SPD") provides, in part, as follows:

> If you have complied with the rules above [regarding
> cooperation], we will pay benefits in connection with the
> injury or illness to the extent that the medical treatment
> would otherwise be a covered benefit payable under this
> SPD. However, we shall have a right to be reimbursed
> for any benefits we provide, *from any recovery received*
> *from or on behalf of any third party or other source of*
> *recovery in connection with the injury or illness*,
> including, but not limited to, proceeds from any:
>
> - Settlement, judgment, or award;
> - Motor vehicle insurance including liability insurance
>   or your underinsured or uninsured motorist coverage;
> - Workplace liability insurance;
> - Property and casualty insurance;
> - Medical malpractice coverage; or
> - Other insurance.

We shall have a first lien on such recovery proceeds, up to the amount of total benefits we pay or have paid related to the injury or illness. *You must reimburse us for any benefits paid, even if the recovery proceeds obtained (by settlement, judgment, award, insurance proceeds, or other payment):*

- *Do not specifically include medical expenses;*
- *Are stated to be for general damages only;*
- *Are for less than the actual loss or alleged loss suffered by you due to the injury or illness*;
- Are obtained on your behalf by any person or entity, including your estate, legal representative, parent, or attorney;
- Are without any admission of liability, fault, or causation by the third party or payer.

. . . .

If we are entitled to reimbursement of payments made on your behalf under these rules, and we do not promptly receive full reimbursement pursuant to our request, we shall have a right of set-off from any future payments payable on your behalf under this SPD.

. . . .

The amount of recovery to be reimbursed or otherwise paid to HMAA is not reduced by any expenses, such as attorneys' fees incurred in connection with the recovery. Accordingly, the common fund doctrine is not to be applied. In addition, the "make-whole" rule of insurance law, which holds that an insurance company may not enforce a right of subrogation or third-party responsibility until the insured party has been fully compensated for any injuries, also does not apply.

ECF No. 49-5 at 4-5 (emphases added).

13

In short — in conflict with Hawaii law — HMAA's Plan provides that HMAA's reimbursement rights apply even if the recovery proceeds are not for special damages, i.e., the proceeds do not include medical expenses or are stated to be for general damages only. *Id.* The present action arises from this conflict: Rudel contends that the Plan's language is invalid under Hawaii law; HMAA contends that ERISA preempts that Hawaii law, and seeks to enforce the Plan's reimbursement provisions.

## C.    Procedural History

### 1.    *HMAA Removes the Action From State Court, and Rudel Moves to Remand*

On December 9, 2015, Rudel filed this Petition against HMAA "pursuant to HRS §§ 431:13-103(a)(10) and 663-10" in the Third Circuit Court, State of Hawaii. ECF No. 1-2. HMAA then removed the action to this court on December 29, 2015, asserting federal jurisdiction under ERISA §§ 502(a) & (e), 29 U.S.C. §§ 1132(a) & (e). ECF No. 1 at 2. HMAA's Notice of Removal alleged that "a petition for determination of validity and amount of lien filed in state court that falls within the scope of the civil enforcement provisions of ERISA is completely preempted and hence removable to federal court." *Id.* at 3-4 (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004) (other citation omitted)).

Rudel filed a Motion to Remand on January 27, 2016, arguing that HMAA improperly removed the action. ECF No. 10. Extensive proceedings ensued to adjudicate the Motion to Remand. And because those proceedings are particularly relevant to understanding the current Motions, the court describes that background in detail.

On March 31, 2016, a magistrate judge issued Findings and a Recommendation ("F&R"), recommending that the Court remand the action to state court for lack of subject-matter jurisdiction. ECF No. 15. On April 14, 2016, HMAA objected to the F&R pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), ECF No. 18, and Rudel responded to HMAA's Objection on April 28, 2016, ECF No. 20.

At that time, the same issue regarding "complete preemption" of §§ 431:13-103(a)(10) and/or 663-10 by ERISA § 502(a) was pending in the District of Hawaii before Judge Susan Oki Mollway in *Noetzel v. Hawaii Medical Service Association*, Civ. No. 15-00310 SOM-KJM. One day before Rudel's Response was filed, on April 27, 2016, Judge Mollway issued an order in *Noetzel* rejecting a similar F&R that had recommended remanding that action. *See Noetzel v. Haw. Med. Serv. Ass'n ("Noetzel I")*, 183 F. Supp. 3d 1094, 1111 (D. Haw. 2016) (concluding that the court had jurisdiction under ERISA § 502).

Accordingly, in May 2016, the parties in this case filed supplemental briefing to address *Noetzel I.* ECF Nos. 23, 24. On June 14, 2016, this court stayed consideration of the Motion to Remand, pending a decision by Judge Mollway on a subsequent motion for reconsideration of *Noetzel I.* ECF No. 25. And on July 27, 2016, Judge Mollway issued a detailed order denying reconsideration of *Noetzel I. See Noetzel v. Haw. Med. Serv. Ass'n ("Noetzel II")*, 2016 WL 4033099 (D. Haw. July 27, 2016).

## 2. The Action Was Properly Removed Under § 502(a)

On August 1, 2016 — having considered the original and supplemental briefing, as well as *Noetzel I* and *Noetzel II* — this court issued an order also rejecting the F&R and denying the Motion to Remand. ECF No. 26; *Rudel v. Haw. Mgmt. All. Ass'n*, 2016 WL 4083320 (D. Haw. Aug. 1, 2016). Applying a two-part test articulated by the Supreme Court in *Davila*, the court concluded that HMAA properly invoked ERISA § 502(a)'s complete preemption exception to the well-pleaded complaint rule.[7] That is, although Rudel's "well-pleaded" Petition invokes only state law (§§ 431:13-103(a)(10) and/or 663-10),

---

[7] Under *Davila*, a state law claim is completely preempted if: (1) the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B) . . . [and (2)] "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. "The complete preemption doctrine applies to the other subparts of § 502(a) as well." *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011) (citation omitted).

"'[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Davila*, 542 U.S. at 207 (quoting *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8 (2003)). "This is so because 'when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Id.* at 207-08 (quoting *Anderson*, 539 U.S. at 8).

Specifically, ERISA § 502(a), "sets forth a comprehensive civil enforcement scheme that completely preempts state-law causes of action within the scope of these civil enforcement provisions." *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011) (citations, quotation marks, and brackets omitted). ERISA § 502(a) provides:

> A civil action may be brought —
>
> (1) by a participant or beneficiary —
> . . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a). ERISA § 502(a)(3) further authorizes a "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other

appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy [in § 502(a)] conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore [completely] pre-empted." *Davila*, 542 U.S. at 209.

This court determined that Rudel is seeking "to recover benefits due to him under the terms of his plan," or "to enforce his rights under the terms of the plan." *Rudel*, 2016 WL 4083320, at *2 (quoting § 502(a)(1)(B)). He also could have filed a § 502(a) action to "clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As stated in *Noetzel I*,

> Under ERISA § 502(a)(3), [petitioner] could have brought a claim to enjoin [the insurer] from enforcing those parts of the Plan that required that [the insurer] be reimbursed. [Petitioner] could have even asked the court to declare that the Plan's reimbursement terms were overbroad or illegal and to enforce the remaining terms of the Plan.

183 F. Supp. 3d at 1106 (citations omitted); *see also Noetzel II*, 2016 WL 4033099, at *3 ("[Petitioner] could have brought a claim asserting that [the insurer's] lien did not entitle [the insurer] be reimbursed for benefits paid to [petitioner] under the plan because the plan's terms permitting reimbursement of settlement amounts

equivalent to general damages are allegedly void under Haw. Rev. Stat. § 663-10.").  Further, the Plan's benefits and terms (and interpretation and validity of those terms) are squarely at issue, as *Davila* also requires.  Thus, the court concluded that Rudel's Petition is completely preempted under § 502(a).  *Rudel*, 2016 WL 4083320, at *4.

### 3.    *This is Now a § 502(a) Action*

Because the case was properly removed to federal court, the action now continues as if it had been filed as a § 502(a) action.  *See, e.g.*, *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) ("If a complaint alleges only state-law claims, and if these claims are entirely encompassed by § 502(a), that complaint is converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)); *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 292 (4th Cir. 2003) ("Because we have found that at least some of Singh's claims are completely preempted, leading to their conversion into federal claims and their removal to federal court, those completely preempted claims must now be decided by the district court."); *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002) ("[W]hen a claim under state law is completely preempted and is

removed to federal court because it falls within the scope of § 502, the federal

court should not dismiss the claim as preempted, but should treat it as a federal

claim under § 502.").

Proceeding as a § 502(a) action, Rudel filed his "Motion for

Determination of Validity of Claim of Lien of [HMAA]" on April 25, 2017.  ECF

No. 38.  HMAA responded with its Motion for Partial Summary Judgment on May

8, 2017.  ECF No. 40.  The parties filed corresponding Oppositions and Replies,

ECF Nos. 49, 50, 52, 53, and the court heard both Motions on July 24, 2017.  ECF

No. 54.  At the court's request, ECF No. 55, the parties filed supplemental briefs,

ECF Nos. 60, 61.  The Motions are now ready to be decided.

## III.  ANALYSIS

The parties agree that HMAA's reimbursement provisions conflict

with Hawaii law.  Rather, the dispositive question is whether Hawaii law is

preempted, at least where an ERISA plan is at issue.[8]

## A.    ERISA Preemption

This is a complicated area of the law.  And it's important to

understand that two distinct ERISA preemption doctrines are involved.  That is,

---

[8]  For a non-ERISA plan, *Yukumoto* held that the statutes take precedence over contrary contractual subrogation rights.  140 Haw. at 299, 400 P.3d at 500.

There are two strands to ERISA's powerful preemptive force. First, ERISA section 514(a) expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a), but state "laws . . . which regulate insurance, banking, or securities" are saved from this preemption. 29 U.S.C. § 1144(b)(2)(A).

Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. *See* 29 U.S.C. § 1132(a). A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a).

*Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (citation and internal brackets omitted).

Litigants and courts sometimes confuse the two doctrines, and occasionally use their terminology interchangeably. *See, e.g.*, *Marin Gen. Hosp.*, 581 F.3d at 944-46 ("The parties in this case have not clearly understood the difference between complete preemption under ERISA § 502(a) . . . and conflict preemption under ERISA § 514(a). . . . We may have been partially responsible for the parties' confusion [because] . . .[s]ome of our prior opinions dealing with complete preemption under § 502(a) have used the terminology 'relate to' even though that terminology is relevant to conflict preemption under § 514(a) rather than complete preemption under § 502(a).") (citations omitted). Further, applying

21

§ 514 is sometimes difficult because "congressional language seems simultaneously to preempt everything and hardly anything[.]" *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 365 (2002). "While Congress occasionally decides to return to the States what it has previously taken away, it does not normally do both at the same time." *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 740 (1985).

"Complete preemption under § 502(a) is 'really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" *Marin Gen. Hosp.*, 581 F.3d at 945 (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008) (brackets omitted)). "But . . . § 502(a) *conflict* [or "complete"] preemption is distinct from *express* preemption [under § 514]." *Fossen*, 660 F.3d at 1111 (citation omitted). "Whether or not the state [law] is exempt from § 514 . . . express preemption, it may still be conflict preempted under § 502(a)[.]" *Id.* at 1112. That is, "[p]reemption under ERISA § 502(a) is not affected by [§ 514]." *Cleghorn*, 408 F.3d at 1226 n.6. "[T]he question whether a law or claim 'relates to' an ERISA plan is not the test for

complete preemption under § 502(a)(1)(B).  Rather, it is the test for conflict

preemption under § 514(a)." *Marin Gen. Hosp.*, 581 F.3d at 949.

> With this background, HMAA raises two interrelated arguments in
favor of preemption:  First, it argues that the Plan's terms control — regardless of
§ 514 — because the court has already determined that Hawaii law is completely
preempted under § 502(a).  Second, it maintains that Hawaii law is expressly
preempted under ERISA § 514(a), and is not saved from such express preemption
under ERISA § 514(b)(2)(A).  The court addresses each argument in turn.

## B.    Hawaii Law Can Provide The "Relevant Rule of Decision" For This § 502(a) Action

> As detailed previously, the court concluded when denying Rudel's
Motion to Remand that Rudel was seeking a remedy under Hawaii law that could
have been brought under § 502(a), and there was no other independent legal duty
implicated by HMAA's actions.  *Rudel*, 2016 WL 4083320, at *2-3.  Because the
court concluded that ERISA completely preempts Rudel's state-law cause of action
under § 502(a), HMAA argues that the court can summarily conclude that the
subrogation/reimbursement provisions in its ERISA Plan are valid regardless of
whether state law might otherwise be "saved" from express preemption under
§ 514(b)(2)(A).  HMAA points to *Davila*, which reasoned that "[u]nder ordinary
principles of conflict pre-emption . . . even a state law that can arguably be

characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Davila*, 542 U.S. at 217-18.

And, at first glance, HMAA's argument appears to make sense. Usually, a "preempted" law is not enforceable, and here "[p]reemption under ERISA § 502(a) is not affected by [§ 514(b)(2)(A)]." *Cleghorn*, 408 F.3d at 1226 n.6. Indeed, HMAA relies on a subsequent order in *Noetzel* that appears to have adopted such reasoning in cursorily granting summary judgment on the merits to the health insurer:

> The present motion seeks a substantive ruling that Noetzel's claims are preempted by ERISA. That is precisely what the court determined in declining to remand Noetzel's claims. That is, although Noetzel pled her claims as if they were based purely on state law, this court found federal questions raised because Noetzel's claims were completely preempted by ERISA. Consistent with the reasoning in both the denial of remand and the denial of reconsideration of that remand order, this court grants partial summary judgment to HMSA, determining that Noetzel's claims are preempted by ERISA for the very reasons set forth in this court's earlier orders on the subject.

*Noetzel v. Haw. Med. Serv. Ass'n*, 2016 WL 7444939, at *3 (D. Haw. Dec. 27, 2016).

Upon closer examination, however, the issue is not so simple.  Such reasoning does not fully recognize the distinction between § 502(a) and § 514.  Moreover, even if a state-law claim "duplicates, supplements, or supplants" a § 502(a) remedy, it does not necessarily follow that parts of that state law cannot be enforced.  Rather, sometimes saved state law provides a "relevant rule of decision" for a § 502(a) action.  *See, e.g.*, *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 377 (1999) (reasoning that because a state law "notice-prejudice rule complements rather than contradicts" ERISA's rules regarding handling of claims, it "supplied the relevant rule of decision for this § 502(a) suit"); *id.* at 376 n.7 ("Ward has sued under § 502(a)(1)(B) for benefits due, and seeks only the application of saved state insurance law as a relevant rule of decision in his § 502(a) action."); *Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700, 709 (D.N.J. 2016) ("[P]reemption of a claim does not mean preemption of an entire theory of suit.  A state law claim may be preempted, but if the claim is under a law or regulation that is saved under ERISA § 514(b)(2)(A), then that law or regulation can 'suppl[y] the relevant rule of decision for [an ERISA] § 502(a) suit' so long as it is not providing relief above and beyond what ERISA § 502 would provide.") (quoting *Ward*, 526 U.S. at 377).  In short, the terms of the state law must be examined.

Stated succinctly, "ERISA's saving clause still ha[s] meaning[.]" *Haw. Mgmt. All. Ass'n v. Ins. Comm'r*, 106 Haw. 21, 33, 100 P.3d 952, 964 (2004). "[T]he Hawaii legislature may continue to 'regulate insurance' so long as the legislature does not create a 'cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy.'" *Id.* (quoting *Davila*, 542 U.S. at 209) (brackets omitted)). "[A] state law that 'regulates insurance' is not preempted so long as it does not create a new claim for relief and does not enlarge a claim for benefits beyond that available in § [502(a)]." *Id.* at 34, 100 P.3d at 965.

*Singh* exemplifies the analysis (in nearly the same context that this court now faces). In *Singh*, the Fourth Circuit examined a Maryland anti-subrogation law, ultimately concluding that it was saved from express preemption under § 514(b)(2)(A) as a law that "regulates insurance" under the test enunciated in *Miller*, 538 U.S. at 342. *See Singh*, 335 F.3d at 286. In so doing, it reasoned:

> [W]hile a State law purporting to supply additional *remedies* to claimants under ERISA plans would impermissibly compete with § 502(a) remedies, and therefore not be saved from preemption as a result of the limited exception from the saving clause, a State law simply mandating or prohibiting certain terms of policy coverage does not force a choice between State regulation of insurance and the prescribed remedies of § 502(a) and therefore may be saved under § 514(b)(2)(A).

*Id.* at 287-88.  The Maryland anti-subrogation provision "does not depend on any particular remedy but operates simply to define the scope of a benefit provided to members of HMOs in Maryland — i.e., entitlement to retain their full benefit and not have it reduced by recoveries from third parties." *Id.* at 288-89.  "In this sense, it does not differ from any other State law mandating or regulating a contractual benefit." *Id.* at 289.  Because the law "does not supplement or supplant ERISA's exclusive remedies . . . it remains 'saved' and therefore 'supplies the relevant rule of decision' in a § 502(a) claim to enforce the provision of State law[.]" *Id.* (quoting *Ward*, 526 U.S. at 377).  "A State law preserved as a regulation of insurance under § 514(b)(2)(A) may supply a substantive term or mandate a benefit in an employee benefit plan, but once that term or benefit becomes part of the plan, a suit to enforce it may only be brought under § 502(a)." *Id.*

*Singh* went on to examine whether the action had been properly removed from state court under § 502(a).  It faced a complaint that "relying on state-law causes of action . . . seeks some remedies that undoubtedly fall within the scope of § 502(a), even if others might fall outside of its scope." *Id.* at 290.  For that reason, the action was completely preempted, and the petitioner was limited to "those remedies set forth in § 502(a)." *Id.* at 292.  But *Singh* recognized that the

relief sought — application of the Maryland anti-subrogation law — could continue in district court in a § 502(a) action:

> Singh's State common-law claims are claims for benefits due under the terms of an ERISA plan and are therefore "completely preempted," such that federal removal jurisdiction exists. In reaching the conclusion that Singh's claims seek to enforce a term of the Prudential plan, we conclude that, although the Maryland HMO Act 'relates' to an employee benefit plan, it is saved as a State regulation of insurance that does not conflict with § 502(a) of ERISA, such that it defines a term of the ERISA plan. Because Singh's claims seek to enforce a term of the Prudential plan, as so modified by State law, they are within in the scope of § 502(a) and must be adjudicated as federal claims under that section.

*Id.* at 292-93. Rather than upholding the dismissal, *Singh* remanded "for consideration of plaintiff's claims to the extent they fall within the scope of § 502(a) of ERISA," while "express[ing] no opinion on whether all of the relief requested in the current complaint is consistent with the remedies supplied under § 502(a)." *Id.* at 293.

This analysis applies here. Parts of § 663-10 *do* create a cause of action that "duplicates, supplements, or supplants" a § 502(a) remedy. It requires "the court . . . [to] determine the validity of any claim of a lien against the amount of the judgment or settlement" in "any civil action in tort." HRS § 663-10(a). And where there is no civil action pending, it authorizes "any party [to] petition a court

of competent jurisdiction for a determination of the validity and amount of any claim of lien." *Id.* At least to that extent, § 663-10 clearly supplements ERISA's remedial scheme under § 502(a), and so the action is completely preempted for purposes of removal jurisdiction.

But the Petition must now be decided as a § 502(a) action. As such, § 431:13-103(a)(10) can still apply (if it is saved from express preemption as a law "which regulates insurance" under § 514(b)(2)(A)). By itself, § 431:13-103(a)(10) does not provide a remedy.[9] It provides "no new cause of action under state law and authorizes no new form of ultimate relief." *Rush Prudential*, 536 U.S. at 379. Rather, as in *Singh*, it can "operate[] simply to define the scope of a benefit provided" to members of HMAA's Plan, "i.e., entitlement to retain their full benefit and not have it reduced by recoveries from third parties." *Singh*, 335 F.3d at 288-89. That is, § 431:13-103(a)(10) — which specifically incorporates § 663-10's limitations on the scope of reimbursement allowable under Hawaii law — can supply the relevant rule of decision in the § 502(a) action. *See also Roche*, 167 F.

---

[9] If there were a private remedy to enforce § 431:13-103(a)(10), it might well be completely preempted by § 502(a). But, as HMAA itself argues, there is no private cause of action to enforce § 431:13-103. ECF No. 53 at 8-9; *see, e.g.*, HRS § 431:13-107 ("All remedies, penalties and proceedings set forth in this article are to be invoked solely and exclusively by the [Insurance] commissioner."); *Wittig v. Allianz, A.G.*, 112 Haw. 195, 206 n.5, 145 P.3d 738, 749 n.5 (Haw. Ct. App. 2006) ("There is no private cause of action for violations of HRS § 431:13-103[.]").

Supp. 3d at 710 ("The [saved] subrogation prohibition contained [in a New Jersey administrative code] therefore 'supplies the relevant rule of decision' for any ERISA § 502(a) claim.") (quoting *Ward*, 526 U.S. at 377).

HMAA argues that because its Plan is an ERISA plan, its terms must apply precisely *because* they conflict with § 431:13-103(a). ECF No. 40-1 at 16; ECF No. 49 at 9 ("[I]n an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern.") (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 106 (2013)). But HMAA takes this conclusory phrase too far — the Supreme Court has long rejected an insurer's "'contra plan term' argument [which] overlooks controlling precedent and makes scant sense." *Ward*, 526 U.S. at 375. The Supreme Court "ha[s] repeatedly held that state laws mandating insurance contract terms are saved from preemption under [§ 514(b)(2)(A)]." *Id.* (citations omitted). Under HMAA's interpretation, "States would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents. This interpretation would virtually 'rea[d] the saving clause out of ERISA.'" *Id.* at 376 (quoting *Metro. Life,* 471 U.S. at 741); *see also, e.g.*, *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan*, 856 F.3d 686,

694 (9th Cir. 2017) (reiterating *Ward's* reasoning that "[t]his interpretation would virtually 'read the savings clause out of ERISA'").

The remaining question, then, is whether § 431:13-103(a)(10) (and perhaps other aspects of Hawaii law) is actually saved from preemption under § 514(b)(2)(A). The court now turns to that question.

## C.    Section 431:13-103(a) is Saved Under ERISA § 514(b)(2)(A)

To reiterate, ERISA § 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). But ERISA § 514(b)(2)(A) saves from preemption "any law of any State which regulates insurance, banking, or securities." *Id.* § 1144(b)(2)(A).

The parties do not dispute that the Hawaii law at issue "relates to" HMAA's Plan. *See, e.g.*, *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009) ("It is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies.") (citations omitted); *Singh*, 335 F.3d at 284 ("State antisubrogation laws 'relate to' an employee benefit plan.") (citation omitted). The question, however, is whether § 431:13-103(a)(10) or § 663-10 "regulates insurance" for purposes of § 514(b)(2)(A).

A two-part test applies to make that determination: "First, the law must be 'specifically directed toward entities engaged in insurance,' and second, it 'must substantially affect the risk pooling arrangement between the insurer and the insured.'" *Orzechowski*, 856 F.3d at 693 (quoting *Miller*, 538 U.S. at 342). "ERISA's saving clause 'saves laws that regulate *insurance*, not insurers.'" *Id.* (quoting *Miller*, 538 U.S. at 334).

"A law is specifically directed toward entities engaged in insurance if it is 'grounded in policy concerns specific to the insurance industry.'" *Id.* (quoting *Ward*, 526 U.S. at 372). "[L]aws of general application that have some bearing on insurers do not qualify." *Miller*, 538 U.S. at 334. Under *Miller*, a state law that "impos[es] conditions on the right to engage in the business of insurance" falls under the savings clause. *Id.* at 338.

A law "substantially affects the risk-pooling arrangement between the insurer and insured" if it alters "the scope of permissible bargains between insurers and insureds." *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 845 (9th Cir. 2009) (citing *Rush Prudential*, 536 U.S. at 355). A law that "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed . . . qualifies as a substantial effect on the risk pooling arrangement[.]" *Miller*, 538 U.S. at 339 n.3. This requirement is aimed at ensuring that the laws in question are

"targeted at insurance practices, not merely at insurance companies." *Morrison*, 584 F.3d at 844.

Applying these principles, § 431:13-103(a)(10) — falling within Hawaii's insurance code — easily meets both prongs of *Miller*. As its legislative history set forth earlier amply demonstrates, the law was specifically directed at insurance (indeed, at *health* insurance). The legislature expressly prohibited health insurers (subject to certain exceptions) from denying or limiting coverage because an insured also has a third-party claim for damages. *Yukumoto*, 140 Haw. at 297, 400 P.3d at 498. In return for that prohibition, § 431:13-103(a)(10) allows insurers to seek reimbursement for duplicative benefits received by an insured from a collateral source. But it limits that reimbursement right to special damages as set forth in § 663-10. *Id.* at 295-96, 400 P.3d at 496-97. This was the Hawaii legislature's intent, and the statutory language is not ambiguous. An antisubrogation law that "directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain . . . does not merely have an impact of the insurance industry; it is aimed at it." *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990).

Moreover, as the legislative history demonstrates, Act 29 (2000) and Act 228 (2002) in particular of the Hawaii Session Laws are both laws

"specifically directed" at health insurance, and both affect the "risk pooling"

arrangement between an insured and insurer. *See Yukumoto*, 140 Haw. at 296-97,

400 P.3d at 497-98. Those Acts amended *both* § 431:13-103(a) and § 663-10.

Indeed, on that basis, some *non-remedial* provisions of § 663-10 might also be

saved,[10] and would be applicable as a "relevant rule of decision." *Ward*, 526 U.S.

at 377. It is enough, however, that § 431:13-103(a)(10) itself falls within ERISA

§ 502(b)(2)(A)'s savings clause.

　　　HMAA emphasizes that § 663-10 is not specifically directed at

insurance because it refers to "any person" (not just insureds) and defines

reimbursement rights of any "persons or entities" (not just insurers). ECF No. 53

at 11. That is, it "regulates non-insurance parties as well as insurance entities" and

"applies in all civil actions, not merely those in which liability insurers will pay the

judgment." *Levine v. United Healthcare Corp.*, 402 F.3d 156, 165-66 (3d Cir.

2005). Under this logic, those parts of § 663-10 are "laws of general application

that have some bearing on insurers," *Miller*, 538 U.S. at 334, which is insufficient

for the law to be "specifically directed" at insurance. *See Levine*, 402 F.3d at 166.

Even so, however, this only means that § 663-10 (or parts of it) is not a law

---

[10] HMAA admits that a court may find that ERISA preempts conflicting portions of state law while leaving other portions intact. ECF No. 61 at 12.

"regulating insurance."  It does not mean that *all* subrogation laws do not "regulate insurance."  *See, e.g.*, *FMC Corp.*, 498 U.S. at 61; *Roche*, 167 F. Supp. 3d at 710.  And it certainly does not change the conclusion that § 431:13-103(a)(10) is specifically directed at insurance, and saved from express preemption.

Accordingly, HMAA's arguments fail; Rudel's Petition survives HMAA's ERISA-preemption challenge.  It is premature, however, to conclude that Rudel fully prevails on his Motion, i.e., that HMAA is not entitled to any reimbursement.  Hawaii law still allows HMAA to be reimbursed for any duplicative recovery that Rudel may have obtained.  This is a matter of proof.  Although the settlement agreement between Rudel and Allstate stated that it was a "general damages only" settlement, it may be that HMAA could seek to contest that proposition.  Or it may be that HMAA must concede that it has no evidence to contradict that settlement agreement, especially here, given the catastrophic nature of Rudel's injuries.  Additional proceedings may be necessary to address the amount of reimbursement (which could be zero).

///

///

///

///

# IV. CONCLUSION

This case aptly demonstrates that applying "the morass of ERISA preemption law," *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 718 (11th Cir. 1996), can be confusing and difficult. And although at first blush appearing to be inconsistent, the court's conclusion that relevant aspects of Hawaii law are saved from express preemption under ERISA § 514(b)(2) is indeed *consistent* with the court's prior Order concluding that Rudel's Petition is subject to "complete preemption" under ERISA § 502(a) for purposes of removal jurisdiction. Although Rudel invoked remedial aspects of Hawaii law (HRS § 663-10(a)) that § 502(a) completely preempts, saved Hawaii law (at minimum, HRS § 431:13-103(a)(10)) still provides the rule of decision in this particular § 502(a) action.

Consequently, Rudel's Motion for Determination of Validity of Claim of Lien of HMAA, ECF No. 38, is GRANTED in part. HMAA's corresponding Motion for Partial Summary Judgment, ECF No. 40, is DENIED. HMAA's claim of lien is limited to reimbursement of any duplicative recovery that Rudel may have obtained. The court therefore directs the parties to meet and confer, and then contact Magistrate Judge Richard Puglisi by November 7, 2017 to schedule a status conference to address whether any further proceedings are necessary to determine

the amount, if any, of HMAA's lien (and if so, what type of proceeding, e.g.,

evidentiary submissions or a trial).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 31, 2017.



    /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Rudel v. Haw. Mgmt. All. Ass'n*, Civ. No. 15-00539 JMS-RLP, Order (1) Granting in Part Petitioner's Motion for Determination of Validity of Lien, ECF No. 38; and (2) Denying Respondent's Motion for Partial Summary Judgment, ECF No. 40